The Court adopts this memorandum opinion as its findings of fact and conclusions of law.

## FRALIN & WALDRON, INC.

v.

## COUNTY OF HENRICO, VIRGINIA, et al.

Civ. A. No. 79–0308–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Aug. 10, 1979.

E. Milton Farley, III, Walter F. Witt, Jr., Joseph C. Kearfott, Hunton & Williams, Richmond, Va., William B. Poff, Diane McQ. Strickland, Woods, Rogers, Muse, Walker & Thornton, Roanoke, Va., for plaintiff.

Frederick T. Gray, John O. Peters, James C. Roberts, Gary J. Spahn, Philip B. Morris, Richmond, Va., for defendants.

## MEMORANDUM

WARRINER, District Judge.

Plaintiff real estate development firm acquired an option to purchase a certain tract of land in Henrico County, Virginia. At that time the tract was zoned to permit medium density residential development. Plaintiff made extensive preparations, planning to build a low to moderate income housing project within the zoning designation. Opposition developed and after a lengthy series of delays the defendant Board of Supervisors, acting on an application submitted by the defendants Silverman and Axselle, downzoned the area in issue. The downzoning had the effect of excluding housing developments of the type planned by plaintiff. Consequently the Planning Commission refused to approve the plaintiff's plan of development (P.O.D.). Thereafter two suits were filed in the Circuit Court of Henrico County whereby plaintiff sought to overturn the Board's rezoning decision and to have its P.O.D. approved. By final judgment rendered on 16 February 1979 the State court set aside the Board's rezoning decision and approved plaintiff's housing project. Defendants thereupon filed a notice of appeal, which action is presently pending in the Supreme Court of Virginia.

Plaintiff subsequently commenced this action alleging that defendants, in their delay in ruling and in their refusal of plaintiff's proposed development plan, had been motivated by racially discriminatory considerations and were therefore liable to plaintiff under 42 U.S.C. §§ 1983 and 1985(3). Plaintiff further alleged that defendants violated the Sherman Act and the Virginia Anti-trust Act, as well as §§ 18.2–500 and 36–93 of the Virginia Code, as amended (1950). Plaintiff requested monetary and injunctive relief against the defendants both individually and in their official capacities. Subsequently plaintiff voluntarily dismissed the two antitrust counts.

On 11 April 1979 defendants Silverman and Axselle filed a motion to dismiss the allegations as against them. On that same day, the defendants County of Henrico, Board of Supervisors and Henrico County Planning Commission filed two motions: that the Court abstain from consideration of the case, and that the action be dismissed entirely for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiff filed its reply and defendants submitted their rebuttal. The motions are now ripe for decision.

Defendants have moved this Court to abstain from deciding this action until the Virginia Supreme Court renders a final decision in the case pending therein between these parties based on the same set of facts.

In the State court trial plaintiff challenged the Board's rezoning decision solely on grounds of State law, and presented technical evidence that all safety and health requirements, and the like, required by law before approval could be issued were satisfied. The trial court concurred in this view and further found there had been insufficient evidence presented to the Board affording the Board a basis for downzoning. Therefore, the trial court set aside the downzoning and approved the development plan. Neither before the Board nor in the trial court was there asserted by plaintiff any rights grounded on racial discrimination. This issue is raised for the first time in the complaint filed in this Court. With these facts in mind we turn to the propriety of defendants' motion to abstain.

In *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), the Supreme Court identified the three major types of abstention and the policies behind them.

*Younger* abstention is appropriate where jurisdiction has been invoked for the purpose of restraining a State criminal prosecution or civil proceeding brought by the State or an agency thereof which is in the nature of a criminal prosecution. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482, *reh. denied*, 421 U.S. 971, 95 S.Ct. 1969, 44 L.Ed.2d 463 (1975). The State court action is not one akin to a criminal prosecution. Further, plaintiff does not seek to restrain State court action. Plaintiff comes to exercise its right to have its constitutional claims adjudicated in the federal court system. *Younger* abstention is therefore inapplicable here.

*Pullman* abstention was first formulated in the case of *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1940). There it was held a federal court should abstain from adjudication "in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976) *citing Cty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959). This type of abstention is also inappropriate here. This Court is not being asked to construe State law. The issues to be resolved in each action are distinct. The question before the State court is whether the defendants' actions in downzoning the land and in disapproving the plaintiff's housing project *could be* justified by the technical health and safety considerations properly within the defendants' authority to consider. The issue presented here is whether, whatever permissible factors *could have been* considered, a discriminatory purpose was *in fact* the motivating reason for the defendants' decision. *See Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (stating that although plaintiff *could have* been properly discharged from his job for no reason at all, he may nonetheless establish a claim if the decision not to rehire him was shown to have been made for a constitutionally impermissible reason.) Whether the Virginia Supreme Court affirms or reverses the trial court's findings that there had been no technical justification for the downzoning will not affect the claim presented here.[1] If the plaintiff shows that defendants' actions were motivated by a discriminatory purpose, and defendants are unable to show that, even had the discrimi-

---

1. For example, if the State trial court's decision invalidating defendants' actions is affirmed, plaintiff's federal claim will fail if it is shown that the actions were not a product of discrimination. By the same token if the defendants' actions are validated in the State court plaintiff may still establish its claim here if it is shown that despite the fact that technical justifications for defendants' actions did exist such actions were nonetheless motivated by impermissibly discriminatory considerations.

natory purpose not played a part in the decision, the same decision would have been made, the plaintiff would have established that its constitutional rights had been violated. *Arlington Heights v. Metro. Housing Corp.*, 429 U.S. 252, 270 & n. 21, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

The last type of abstention is known as the *Burford* doctrine. *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943). In the proper situation the Court dismisses the action altogether after determining that the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 814, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1977). It is quite obvious that a determination by this Court that defendants were or were not motivated by unconstitutionally discriminatory considerations in downzoning the land in issue and in disapproving plaintiff's P.O.D. could not possibly disrupt the State's legitimate efforts in establishing its land use policies.

Defendants' reliance on *Fralin & Waldron, Inc. v. City of Martinsville*, 493 F.2d 481 (4th Cir. 1974) to support their *Burford* based motion to abstain is misplaced. There the federal question involved the constitutionality of a municipal zoning ordinance. Since questions of this nature can be resolved only upon an extensive review of the State's individual land use policies, and are thus peculiarly within the expertise of the Virginia State Court, abstention was appropriate. Although land use issues will undoubtedly be presented in the case before this Court, we are not asked to review the propriety of such policies. The sole question here is whether, whatever permissible land use factors *could have been* considered, a discriminatory purpose was *in fact* the principle consideration motivating the defendants to take the action they did. *See Arlington Heights v. Metro. Housing Corp.*, 429 U.S. 252, 265–6, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977).

■ In their attempt to convince this Court that abstention is warranted defendants have apparently confused the discretionary powers vested in this Court in deciding to abstain, *see e. g. Railroad Commission v. Pullman Co.*, 312 U.S. 496, 501, 61 S.Ct. 643, 85 L.Ed. 971 (1941), with those involved in fashioning the appropriate remedy. *See e. g. Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971). While the factors considered to determine the propriety of either may overlap, the underlying question in the decision to abstain is the necessity and appropriateness of determining the *merits* of plaintiff's claim. In contrast, the Court exercises its discretionary powers in fashioning a remedy only after the merits of plaintiff's claim has been fully established.

■ Thus in determining the appropriate relief the Court must give due regard to federalism, just as it does in determining whether or not to abstain. *See Lemon v. Kurtzman*, 411 U.S. 192, 208, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973). The Court should use its discretionary powers, when fashioning a remedy, "for nice adjustment and reconciliation between the public interest and private needs . . . ." *Id.* at 201, 93 S.Ct. at 1469, *quoting Hecht Co. v. Bowles*, 321 U.S. 321, 329–30, 64 S.Ct. 587, 88 L.Ed. 754 (1944). Thus although the Court may find it prudent to take into consideration the decision of the State court in fashioning a remedy,[2] nothing presented by defendants permits this Court to abstain

2. For example, assuming the Court finds the defendants' actions were unjustifiably motivated by a discriminatory purpose, if the State Supreme Court reverses the trial court, determining there were adequate technical reasons why plaintiff's housing project should not be built on the land in question, this Court may find that although a damage award is warranted, equitable relief in the form of an injunction ordering the Board to rezone the land and approve the housing project would be contrary to the public interest. On the other hand, if the State Supreme Court affirms the lower court's decision, while a damage award would be appropriate, injunctive relief would be unnecessary.

from adjudicating the merits of plaintiff's claim pending a final State adjudication. Accordingly, defendants' motion to abstain is denied.

Defendant members of the Planning Commission, the Board of Supervisors, and the County Attorney also move to dismiss the counts against them claiming they are entitled to absolute immunity for their conduct in downzoning the area in question and in disapproving plaintiff's P.O.D.

■ Directing this Court's attention first to the Board of Supervisors, plaintiff replies that absolute immunity should not extend to local legislators. While recognizing the holding in *Shannon Fredricksburg Motor Inn, Inc. v. Hicks,* 434 F.Supp. 803 (1977), that the absolute immunity afforded state and federal legislators should apply equally to local legislators, plaintiff asserts that the better rule is enunciated by the First, Fifth, Sixth, and Seventh Circuits. There, the courts have refused to extend absolute immunity to activities of local legislators. We disagree, and follow the holding in *Shannon* since "there is [no] rational basis for distinguishing the safeguards necessary to permit local legislators to carry out their legislative duties from those which have been clearly accorded the state legislators . . . ." *Id.* at 805. This Court finds additional support for this view in the recent Supreme Court decision of *Lake Country Estates v. Tahoe Reg. Planning,* 440 U.S. 391, 99 S.Ct. 1171, 59 L.Ed.2d 401 (1979). There, it was held that regional legislators were entitled to the same absolute immunity as are State and federal legislators because this policy "recognizes the need for immunity to protect the 'public good.'" *Id.* at 405, 99 S.Ct. at 1179.

This holding, however, does not protect legislators from suit with respect to all their actions. *Gravel v. United States,* 408 U.S. 606, 625, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972). Absolute immunity from suit arises only where a legislator's allegedly injurious conduct had been "generally done in the process of enacting legislation . . . ." *United States v. Brewster,* 408 U.S. 501, 514, 92 S.Ct. 2531, 2538, 33 L.Ed.2d 507 (1972). Accordingly, inasmuch as the complaint alleges acts by the Board of Supervisors within their "legislative function" of making zoning decisions or "deliberations that make up the legislative process," defendant Board of Supervisors is absolutely immune from suit. *See Tenney v. Brandhove,* 341 U.S. 367 at 376–8, 71 S.Ct. 783, 95 L.Ed. 1019 (1951). However, inasmuch as the complaint against the Board of Supervisors alleges conduct beyond that necessary to perform their duties in establishing zoning policies, the Board of Supervisors is subject to suit under §§ 1983 and 1985(3). *See Hutchinson v. Proxmire,* —— U.S. ——, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979).

Plaintiff argues with respect to the Planning Commission and the County Attorney, that they serve in an executive, not a legislative capacity, and are therefore entitled only to a qualified immunity rather than an absolute legislative immunity.

Absolute immunity refers to the right to be free, not only from the consequences of the litigation's results, but from the burden of defending oneself altogether. *Hutchinson v. Proxmire,* —— U.S. ——, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979); *Dombrowski v. Eastland,* 387 U.S. 82, 85, 87 S.Ct. 1425, 18 L.Ed.2d 577 (1967). Qualified immunity extends only to immunity from damages. *Scheuer v. Rhodes,* 416 U.S. 232, 238–9, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Additionally, the extent of immunity afforded a government official is to be determined by the nature of the act complained of, rather than the name of the office in which he serves. *Butz v. Economou,* 438 U.S. 478, 511–12, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). Thus even those who generally serve in an executive position may be entitled to absolute immunity from suit when their duties encompass acts necessary to the process of enacting legislation. *Cf. Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

■ The members of the Planning Commission were engaged in legislation when recommending the land in issue be rezoned, since such recommendation procedure is an essential part of the adoption of zoning

laws.[3] These defendants are therefore entitled to absolute immunity from suit with respect to their participation in downzoning the area in issue. However, such immunity does not extend to their executive actions in enforcing the zoning change by refusing to approve plaintiff's P.O.D. or in their alleged attempts to hinder construction of plaintiff's housing project by communication with plaintiff's bank. In this respect the defendant Planning Commission members are subject to suit and may be entitled to a qualified immunity from damages only.

In his capacity as secretary to the Planning Commission, defendant LaVecchia is likewise absolutely immune from suit with respect to the downzoning incident. However, he is subject to suit and entitled only to a qualified immunity for his participation in the enforcement of the zoning decision, and alleged bank incident just as are the other members of the Commission.

■ With respect to the enforcement conduct engaged in by the County Attorney in disapproving plaintiff's P.O.D., he too is entitled only to a qualified immunity from damages.

■ Plaintiff also names as a defendant the County of Henrico. The United States Supreme Court has recently clarified that actions under § 1983 may be taken directly against legal as well as natural persons. A municipality, however, cannot be held liable under a respondeat superior theory. *Monell v. New York City Dept. of Soc. Serv.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Since it is the execution of the zoning laws, a function of the County, which has allegedly inflicted injury upon the plaintiff, the County is subject to suit under § 1983.

Defendants Silverman and Axselle also moved to dismiss the complaint against them. First they claim that as private persons they were at no time acting "under color of State law" so as to subject them to suit under § 1983. In a reply memorandum

plaintiff states that the allegations against these two defendants "should be limited to statement of a § 1985(3) claim." This Court will construe plaintiff's statement as an acceptance of defendants' argument regarding their liability under § 1983. Accordingly, the claim against Silverman and Axselle, in as much as it attempts to subject these defendants to suit under § 1983 will be dismissed.

Next, defendants argue that the complaint fails to state a claim against them under § 1985(3) in that it shows plaintiff is not a member of the class allegedly discriminated against. To establish standing to bring a cause of action a plaintiff is required to " 'allege such personal stake in the outcome of the controversy' as to warrant his invocation of federal court jurisdiction and to justify exercise of the court's remedial powers on his behalf." *Warth v. Seldin,* 422 U.S. 490, 498–9, 95 S.Ct. 2197, 2205, 45 L.Ed.2d 343 (1975), *quoting Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962). To satisfy this "personal stake" standard plaintiff need allege he has personally sustained an injury which is fairly traceable to the defendants' conduct, and that such injury is likely to be redressed by a favorable decision from the court. *Simon v. Eastern Ky. Welfare Org.,* 426 U.S. 26, 38, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976).

■ Since plaintiff asserts that as a direct consequence of the defendants' conduct, plaintiff sustained substantial economic injury, and relief in the form of an injunction and damages will provide redress, the constitutional requirements of standing have been satisfied. *Accord, Arlington Heights v. Metro. Corp.,* 429 U.S. 252, 261–3, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977). The issue to resolve here then, is whether plaintiff is able to bring his claim under the civil rights statute. Defendants assert that a right to bring an action under this statute arises only where plaintiff can show that he was a member of the class allegedly discriminated against. Ordinarily,

---

**3.** "No zoning ordinance shall be amended or reenacted unless the [Board of Supervisors] has referred the proposed amendment or reenactment to the [Planning Commission] for its recommendation." Va.Code, Ch. 11, Art. 8, § 15.1–493 (Cum.Supp.1978).

a plaintiff may not bring an action to redress the rights of a third party. However, the Supreme Court has made certain exceptions to this rule. *See e. g. Craig v. Boren*, 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976); *Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). In *Arlington Heights, supra*, the Supreme Court, when faced with this question, found it unnecessary to decide, since at least one of the individual plaintiffs had demonstrated he was a member of the class which was the target of defendants' alleged discrimination. No such plaintiff is a party in the case presented here. The Supreme Court in *Arlington Heights* did cite three of its prior decisions which indicate the trend of the law in the area of civil rights—*Barrows v. Jackson*, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), *Sullivan v. Little Hunting Park*, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969), and *Buchanan v. Warley*, 245 U.S. 60, 38 S.Ct. 16, 62 L.Ed. 149 (1917).

In *Barrows* the Court held a white defendant had standing to assert the constitutional rights of black persons as a defense to a suit against him alleging breach of a racially restrictive covenant. In *Buchanan*, a white person who sought to enforce a contract to sell his house to a black person was granted standing to assert the unconstitutionality of a racially discriminatory housing ordinance. The *Sullivan* case, the most recent of the three, is also the one most closely analogous to the case facing the Court today. There the two plaintiffs, a white and a black, brought an action under § 1982. Like § 1985 this statute "reaches beyond state action . . . operates upon the unofficial acts of private individuals and . . . is authorized by the Enabling Clause of the Thirteenth Amendment." *Sullivan v. Little Hunting Park*, 396 U.S. 229, 235, 90 S.Ct. 400, 404, 24 L.Ed.2d 386 (1969). The white plaintiff homeowner was a member of the defendants' organization. As a member it was agreed that if this plaintiff rented out his home, he could assign his membership interest to his tenant, subject to the approval of

the defendant organization's Board of Supervisors. After purchasing another home in the same area this plaintiff leased his old home to the black plaintiff, assigning his membership interest to the black plaintiff. The Board of Supervisors thereupon refused to approve the assignment and expelled the white plaintiff from the organization. Both plaintiffs then joined to bring an action against the organization under § 1982. The Court held the white plaintiff had standing to bring the action under § 1982 to redress the injuries he incurred resulting from the defendants' discriminatory conduct. Quoting *Barrows v. Jackson*, 346 U.S. 249, 259, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953) the Court explained this decision was appropriate since a white person "is at times 'the only effective adversary' " to vindicate the rights of minorities intended to be protected by the statute. *Sullivan v. Little Hunting Park*, 396 U.S. 229, 237, 90 S.Ct. 400, 404, 24 L.Ed.2d 386 (1969).

The same rationale has been frequently applied to suits brought by white plaintiffs under § 1981. See *Winston v. Lear-Sieger, Inc.*, 558 F.2d 1266 (6th Cir. 1977); *Cubas v. Rapid AM Corp., Inc.*, 420 F.Supp. 663 (E.D. Pa.1976).

These cases indicate the trend taken by the courts to "accord [to the civil rights statute] a sweep as broad as [their] language." *Griffin v. Breckenridge*, 403 U.S. 88, 97, 91 S.Ct. 1790, 1796, 29 L.Ed.2d 338 (1971), *quoting United States v. Price*, 383 U.S. 787, 801, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966) (*Griffin* referring specifically to actions taken under § 1985). Indeed, the Third Circuit has expressly found that even though a plaintiff is not a member of the class allegedly discriminated against, where such plaintiff had been personally injured as a consequence of the defendants' discriminatory conduct, he is entitled to bring an actionable claim under § 1985(3). *Richardson v. Miller*, 446 F.2d 1247 (3rd Cir. 1971).

Plaintiff here has likewise alleged that as a consequence of the defendants' racially discriminatory conduct it has incurred substantial economic injury. Accordingly, de-

fendants' motion to dismiss plaintiff's § 1985(3) claim based on this argument will be denied.

There is no need to decide whether the plaintiff would be entitled to bring this action as a "class of developers" who had been denied equal protection under the law. Neither is there a need to discuss whether such a class member must establish that defendants had been acting under color of State law since it has been well settled that racially discriminatory conduct by private persons as well as public officials constitutes a cause of action under § 1985. *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).

█ Defendants finally argue that the complaint should be dismissed against them because it fails to allege a conspiracy with sufficient particularity. *See Davis v. Sprouse*, 405 F.Supp. 45 (E.D.Va.1975).

This Court finds to the contrary. Plaintiff has alleged the defendants conspired against them, that the overt actions pursuant to such conspiracy had been motivated by racial bias, and that as a result thereof, plaintiff has been injured.

In a motion to dismiss for failure to state a claim the Court must assume plaintiff's allegations as true. *Kugler v. Helfant*, 421 U.S. 117, 126 & n. 5, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975); *Lucas v. Kale*, 364 F.Supp. 1345, 1348 (W.D.Va.1973). If plaintiff's allegations are proven, a conspiracy under § 1985(3) may be found. Therefore defendants' motion to dismiss based on this argument is denied.

An appropriate order shall issue.

### ORDER

In accordance with the memorandum filed herewith it is hereby ORDERED that:

1. Defendants' motion to abstain from adjudication on the merits of this case until a final decision is rendered on the appeal pending in *Bd. of Supervisors of Henrico County, et al. v. Fralin & Waldron, Inc.*, (Cir.Ct. Nos. 78–C–687 & L–1110) is DENIED;

2. Defendants' motion to dismiss the claim against the Board of Supervisors based on absolute immunity insofar as it relates to the Board's conduct necessary to its duties in enacting zoning laws is GRANTED;

3. Defendants' motion to dismiss the claim against the Board of Supervisors insofar as it relates to their conduct going beyond the sphere of their legislative activity is DENIED;

4. Defendants' motion to dismiss the claim against the Planning Commission and William F. LaVecchia insofar as it relates to their participation in the downzoning action is GRANTED;

5. Defendants' motion to dismiss the claim against the Planning Commission and LaVecchia with respect to their actions in enforcing the zoning decision and the Bank incident is DENIED;

6. Defendants' motion to dismiss the complaint as against William Broaddus, the Henrico County Attorney, is DENIED;

7. Defendants' motion to dismiss the complaint against the County of Henrico is DENIED;

8. Defendant Silverman and Axselle's motion to dismiss the § 1983 claim as against them is GRANTED;

9. Defendant Silverman and Axselle's motion to dismiss the § 1985(3) claim as against them is DENIED.

Let the Clerk send a copy of this order and the accompanying memorandum to counsel of record.