George Larkin ROBERSON, Plaintiff,

v.

Edgar MULLINS, et al., Defendants.

Civ. A. No. 92–CV0121–B.

United States District Court,
W.D. Virginia,
Big Stone Gap Division.

Jan. 30, 1995.

John Mack Farmer, Wolfe & Farmer, Norton, VA, for plaintiff.

James Parker Jones, Penn, Stuart, Eskridge & Jones, Bristol, VA, Susan Debra Oglebay, Kobak & Oglebay, Pound, VA, Mark E. Frye, Penn, Stuart, Eskridge & Jones, Abingdon, VA, for defendants.

*MEMORANDUM OPINION*

WILSON, District Judge.

This is an action pursuant to 42 U.S.C. § 1983 by George Larkin Roberson, against the Board of Supervisors of Wise County, Virginia (the Board), and against six members of the Board in their individual capacities.[1] The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. Roberson maintains that he was terminated as Superintendent of Public Works by the Board on account of his party affiliation in violation of the First and Fourteenth Amendments. In an earlier opinion, the court found that party affiliation is not an appropriate qualification for the position of Public Works Superintendent. *Roberson v. Mullins,* No. 92–0121 (W.D.Va. Apr. 15, 1993).[2] A jury found that the Board terminated Roberson because of his party affiliation, and the parties have submitted the award of damages to the court. This opinion memorializes the court's rulings at trial that the Eleventh Amendment does not immunize the Board and that the Board members, in their individual capacities, are entitled to qualified immunity. The court also now finds that Roberson is entitled to recover compensatory damages from the Board of $37,236.73.

## I.

On April 25, 1988, Roberson, an active Republican, was selected by the Board to serve as the Wise County Public Works Superintendent.[3] On January 1, 1992, the six individual defendants, all Democrats, were elected to the Board. Subsequent to January 1992, Roberson was informed by the county administrator that political pressure was mounting to replace Roberson with a Democrat. In June of 1992, a member of the Board offered Roberson a part-time position as consultant to the Public Works Superintendent. The consultant position paid twenty-five percent less than the Superintendent position. Roberson declined the offer. In July of 1992, the County Board voted to terminate Roberson. Roberson was replaced by a Democrat. The jury found that Roberson was terminated because of his party affiliation.

## II.

▮ The Board and its members in their individual capacities have taken the untenable position that they are immune from suit under the Eleventh Amendment because they participated in an insurance plan, the premiums of which were paid by the Commonwealth of Virginia.[4] Mostly, they rely on *Bockes v. Fields,* 999 F.2d 788 (4th Cir.1993), for support. The court finds that reliance misplaced.

In *Bockes,* this court found the Grayson County, Virginia, Department of Social Services to be protected by Eleventh Amendment immunity:

In sum, the Local Department's structure and organization and its relationship with the Virginia Department, coupled with the fact that most of the judgment would be paid from state funds, preponderate in favor of the conclusion that the Local De-

---

1. The defendant board members are Edgar Mullins, Sam Church, Claude Collins, Jack Kiser, J. Fred Tate, and Donnie Dowell.

2. In addition to holding that party affiliation is not an appropriate qualification for the position, the court also held that the Board and its members are not entitled to legislative immunity. The defendants took an interlocutory appeal, and the court of appeals affirmed that holding. *Roberson v. Mullins,* 29 F.3d 132 (4th Cir.1994).

3. Essentially, the Public Works Superintendent supervises the county landfill, the county garbage pickup, and the placing of gravel on certain county roads. The Public Works Superintendent is under the direction and control of the Board.

4. Roberson counters that Eleventh Amendment immunity applies only when a judgment must be paid out of state funds and that Virginia is not compelled to pay the judgment: it only does so because it has voluntarily established the liability insurance trust fund. *See, e.g., Beardsley v. Webb,* 30 F.3d 524 (4th Cir.1994); *Jackson v. Georgia Dep't of Transp.,* 16 F.3d 1573, 1577–78 (11th Cir.1994); *Griess v. Colorado,* 841 F.2d 1042, 1046–47 (10th Cir.1988); *Duckworth v. Franzen,* 780 F.2d 645, 650–51 (7th Cir.1985); *Demery v. Kupperman,* 735 F.2d 1139, 1147 (9th Cir.1984); *Travelers Indem. Co. v. School Bd. of Dade County,* 666 F.2d 505 (11th Cir.), *cert. denied,* 459 U.S. 834, 103 S.Ct. 77, 74 L.Ed.2d 74 (1982) (Eleventh Amendment immunity applies only if the judgment must, under all circumstances, be paid out of state funds).

partment is, in essence, the states' alter ego, and thus, protected by the Eleventh Amendment from a damage award in a § 1983 action in federal court.

*Bockes v. Fields*, 798 F.Supp. 1219, 1224 (W.D.Va.1992). The court of appeals affirmed on that issue stating that it is "well established that this immunity extends to *state* agencies and officials, when a money judgment against them would be paid from the state treasury," *Bockes*, 999 F.2d at 790 (emphasis added), and noting that when such an action "would be satisfied by state funds ... no further inquiry is necessary." *Id.* at 791. However, as the court of appeals reiterated later, in a case involving individual officers of a local political subdivision, "[t]he Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983," *Beardsley v. Webb*, 30 F.3d 524, 531 (4th Cir.1994) (citing *Hafer v. Melo*, 502 U.S. 21, 30–31, 112 S.Ct. 358, 364, 116 L.Ed.2d 301 (1991)), and "does not 'afford protection to political subdivisions such as counties....' " *Beardsley*, 30 F.3d at 532 (citing *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401 (1979)).[5] Thus, the court found at trial that the state's voluntary insurance program cloaks neither the Board nor its members in their individual capacities with Eleventh Amendment immunity.

## III.

██ At trial, individual Board members argued that they were entitled to qualified immunity. The court agreed. Qualified immunity shields government officials from liability for civil damages when they perform discretionary functions, unless their acts violate clearly established constitutional rights of which a reasonable person would have

known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). A right is clearly established when "the contours of the right [are] sufficiently clear that a reasonable official would understand that [the act in which he is engaging] violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Thus, qualified immunity is not available if the unlawfulness of the official's act is objectively apparent given the pre-existing law at the time of the act. *Akers v. Caperton*, 998 F.2d 220, 226 (4th Cir. 1993). In an earlier opinion, the court held that the Wise County Public Works Superintendent is not subject to dismissal because of his party affiliation. *Roberson v. Mullins*, No. 92–0121 (W.D.Va. April 15, 1993). Whether that conclusion would have been objectively apparent to a reasonable official given the law at the time of Roberson's termination, however, is another matter.

██ It is clear that a reasonable government official should know that the Supreme Court established a rule protecting public employees from discharge solely for patronage reasons unless party affiliation is an appropriate requirement for performance of their jobs. *McConnell v. Adams*, 829 F.2d 1319 (4th Cir.1987). But, the devil is in the details. "[F]or most positions it is impossible to know whether party affiliation is a permissible requirement until a court renders its decision." *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 111, 110 S.Ct. 2729, 2756, 111 L.Ed.2d 52 (1990) (Scalia, J., dissenting).[6] Frequently, nuances lead to what might appear to be conflicting results. *Compare Diamond v. Chulay*, 811 F.Supp. 1321 (N.D.Ill.1993) (party affiliation an appropriate requirement for Superintendent of Public Works for a village in Illinois) *with Akers v.*

---

5. Extension of Eleventh Amendment immunity to local political subdivisions that participate in a state's voluntary indemnification program would eliminate the need for insurance protection altogether and create a condition whereby government officials, as well as local political subdivisions, would be "immune from suit by virtue of the state initiating the insurance protection." *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1577 (11th Cir.1994).

6. The court does not suggest that government officials automatically receive qualified immunity simply because there is not a strict factual nexus between their actions and the precedent establishing the right allegedly violated. *Mitchell v. Forsyth*, 472 U.S. 511, 535 n. 12, 105 S.Ct. 2806, 2820 n. 12, 86 L.Ed.2d 411 (1985). However, government officials are not compelled to predict the enlargement of constitutional rights or the clarification of legal principles. *Id.* at 534–35, 105 S.Ct. at 2819–20.

*Caperton,* 998 F.2d 220 (4th Cir.1993) (party affiliation *not* an appropriate requirement for County Maintenance Supervisor in West Virginia). "Faced with such uncertainty, it may be preferable to err on the side of caution and ... find qualified immunity where [the court] cannot confidently state that the right was clearly established or that the officials must have known their acts were proscribed by law." *Pounds v. Griepenstroh,* 970 F.2d 338, 342 (7th Cir.1992). At trial, the court found uncertainty and, thus, concluded that the Board members are personally entitled to qualified immunity for Roberson's termination.[7]

### IV.

 Roberson is entitled to recover from the Board damages proximately caused by his termination. This includes back pay and benefits, as well as emotional distress. Before his termination, Roberson told the Board, however, that he intended to retire on May 16, 1993. Finding that Roberson, in fact, intended to retire on that date, the court concludes that Roberson may not recover back pay accruing after that date. *See Miner v. City of Glens Falls,* No. 89–CV–918, 1992 WL 349668, at \*3–4, 1992 U.S.Dist. LEXIS 17370, at \*12 (N.D.N.Y. Nov. 12, 1992), *aff'd,* 999 F.2d 655 (2nd Cir.1993). *See generally McKennon v. Nashville Banner Publishing Company,* —— U.S. ——, ——, 115 S.Ct. 879, 886, 130 L.Ed.2d 852 (1995). Nor is he entitled to reinstatement. The Board, assuming that Roberson would have retired on May 16, 1993, has submitted a schedule of lost wages and benefits. That schedule shows that Roberson's lost wages, reduction in pension payments, reduction in social security payments, and loss of health care benefits total $27,236.73.

 The Board asserts that any award of back pay should be reduced by the amount that Roberson would have earned if he had accepted the consulting position it allegedly offered him. The court disagrees. The consulting position reduced Roberson's income by approximately $1,000 per month, stripped

Roberson of much of his authority and responsibility, and demoted him to the new superintendent's trainer. Although a plaintiff in a § 1983 action has a duty to mitigate damages and cannot refuse to accept a comparable or substantially equivalent position, *Meyers v. City of Cincinnati,* 14 F.3d 1115, 1119 (6th Cir.1994); *Matlock v. Barnes,* 932 F.2d 658, 667 (7th Cir.1991), an illegally demoted employee is not required to accept alternative employment of an inferior kind. *Williams v. Albemarle City Board of Education,* 508 F.2d 1242 (4th Cir.1974). The court finds that the consulting position offered by the Board was inferior and constituted a demotion for Roberson. Additionally, the court finds that the Board's offer of the consulting job was positioned, although not expressly, as a conditional exchange of jobs, not as an unqualified offer of other employment. Therefore, the court finds that the Board has failed to prove that Roberson did not mitigate his damages.

 Finally, the court finds that Roberson is entitled to recover for emotional distress and humiliation. Previously, no employer had discharged Roberson. Roberson proved that the experience was embarrassing and humiliating, causing him emotional distress. Based on the above findings, the court will award Roberson the following compensatory damages:

| | | |
|---|---|---|
| Special Damages | – | $27,236.73 |
| Emotional Distress | – | $10,000.00 |
| Total | – | $37,236.73 |

### V.

For the reasons stated, the court concludes that neither the Board nor its members are protected by Eleventh Amendment immunity, that Board members are entitled to qualified immunity in their individual capacities, and that Roberson is entitled to $37,236.73 in compensatory damages from the Board.

---

7. If qualified immunity required subjective good faith, some of the individual defendants would be out of luck. The reasons they assigned for Roberson's termination are transparently pretextual.