James BRICKEY, et al., Plaintiffs,

v.

COUNTY OF SMYTH, VIRGINIA, et al., Defendants.

Civil Action No. 93–0192–A.

United States District Court, W.D. Virginia, Abingdon Division.

Oct. 25, 1996.

Steven R. Minor, Elliott, Lawson & Pomrenke, Bristol, VA, Reelia R. Watson, Abingdon, VA, for James Brickey, Joseph Kenny, Dale Allen Miller, Christopher Roberts, Ronald Rolen, Danny Waddle.

William Fain Rutherford, Jr., Todd A. Leeson, Flippin, Densmore, Morse, Rutherford & Jessee, Roanoke, VA, for County of Smyth, Virginia, John NMN Grubb.

John Patrick Griffin, Office of the Attorney General, Richmond, VA, for Commonwealth of Virginia.

William Fain Rutherford, Jr., Flippin, Densmore, Morse, Rutherford & Jessee, Roanoke, VA, for Smyth County Sheriff's Department.

Henry S. Keuling–Stout, Keuling–Stout, P.C., Big Stone Gap, VA, for Jerry L. Archer.

## OPINION

JONES, District Judge.

The principal issue for decision is whether Virginia deputy sheriffs are employees of the particular county in which they are employed, for the purposes of the Fair Labor Standards Act. I hold that they are not, and that accordingly the present action must fail. I also hold, as a preliminary matter, that the Eleventh Amendment does not bar the present case.

### I. Introduction.

The plaintiffs, former deputy sheriffs of Smyth County, Virginia, bring this action under the Fair Labor Standards Act ("FLSA" or "Act"), 29 U.S.C. § 201 *et seq.*, against the Compensation Board of the Commonwealth of Virginia, Smyth County, the Smyth County Sheriff's Office, and the present and certain past sheriffs of Smyth County. The plaintiffs claim they were not compensated properly for overtime, holiday, and vacation leave accrued during their employments with Sheriff Jerry Archer and Sheriff

John Grubb.[1] The plaintiffs further allege that the defendants wilfully and deliberately avoided proper payment of required overtime compensation. The plaintiffs request actual and liquidated damages under the FLSA.

This matter is before the court on Smyth County's motion for summary judgment pursuant to Fed.R.Civ.P. 56. Summary judgment is appropriate only when there are no genuine issues of material fact and when the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The moving party bears the burden of proving that no genuine issue of material fact exists. *Id.* at 248, 106 S.Ct. at 2510. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party, who has the burden of coming forward with affidavits, interrogatories, depositions, or other admissible evidence demonstrating the existence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Because I find as a matter of law that Smyth County is not the plaintiffs' employer under the FLSA, Smyth County's motion for summary judgment is granted.

## II.  Facts.

All six plaintiffs worked as deputy sheriffs under Sheriff Archer. Sheriff Grubb was elected to office in November 1991 and declined to reappoint three of the plaintiffs— Mr. Roberts, Mr. Waddle, and Mr. Brickey— to positions in his administration. Mr. Kenney resigned in late 1990. Mr. Miller worked for Sheriff Grubb until he resigned August 14, 1992. Mr. Rolen worked for Sheriff Grubb until he resigned June 30, 1993. None of the plaintiffs currently work as deputy sheriffs in Smyth County.[2]

The plaintiffs' complaint and amended complaint allege they were not paid appropriately for overtime, holiday, and vacation leave during the course of their employment with Sheriff Archer. Specifically, the plaintiffs claim that although they were allotted compensatory time for overtime hours worked, they were neither permitted holidays or vacation days as required by state law in Virginia, nor were the plaintiffs paid compensatory time for the holidays or vacation days they worked. Instead, if the plaintiffs wished to take holidays or vacation days off from work, they were forced to use accrued compensatory time. The plaintiffs claim that through this practice of "requiring the plaintiffs to use their overtime compensation instead of state law annual leave and holiday leave days, then refusing to pay the accrued annual leave and holiday leave, the Sheriff's Office has deprived the plaintiffs of the overtime compensation to which they are entitled to under the FLSA." Plaintiffs' Amended Complaint, ¶ 17.

As Virginia has structured it, the Commonwealth, through its Compensation Board, determines and pays the salaries of deputies hired by a county sheriff by reimbursing the county for the pre-approved amounts paid to the deputies. Va.Code Ann. §§ 14.1–51, 14.1–79 (Michie 1993). While Virginia law contemplates a county being able to pay greater amounts than those approved by the Compensation Board, Va.Code Ann. § 14.1–11.4 (Michie 1993), in the present case,

---

1. At the argument on summary judgment, the plaintiffs conceded that under *Seminole Tribe v. Florida*, —— U.S. ——, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), this court does not have subject matter jurisdiction over the plaintiffs' claims against the Compensation Board, Sheriff Grubb, Sheriff Archer, Sheriff David Bradley—in their official capacities—or the Smyth County Sheriff's Office.

The plaintiffs also sued Mr. Archer in his individual capacity. Mr. Archer is deceased; the federal claims against him in his individual capacity will be dismissed for failure to make a timely motion for substitution of his executrix as required pursuant to Fed.R.Civ.P. 25(a)(1).

The plaintiffs also moved the court for leave to voluntarily dismiss their state law claims based on express or implied contract and Va.Code Ann. § 15.1–19.3 (Michie 1989) against all defendants pursuant to Fed.R.Civ.P. 41(a)(2). Those claims, other than as to Mr. Archer, were dismissed, without prejudice, by order dated September 27, 1996. Any state claims remaining that pertain to Mr. Archer will also be dismissed, without prejudice.

2. Mr. Grubb was the sheriff of Smyth County when the plaintiffs brought this suit; his successor and the current sheriff of Smyth County is David Bradley.

Smyth County did not contribute to deputies' salaries. Under Virginia law, a sheriff is an independent constitutional officer—an officer whose power does not derive from the State or the county. Va. Const. Art. VII, § 4. A sheriff has the sole discretion to hire and fire deputies, Va.Code Ann. § 15.1–48 (Michie 1989), and the record reflects that Smyth County played no role in the decision to hire or terminate any of the plaintiffs. It is noteworthy that, according to their depositions, none of the plaintiffs ever interviewed or discussed job opportunities with anyone other than the sheriffs for whom they worked. Moreover, there is no evidence in the record that Smyth County determined in any fashion the working conditions of the deputies. It did not fix their work schedules or otherwise set their hours of work, all of which was directed by their sheriffs. The plaintiffs presented evidence that Smyth County had collected time cards for the deputies on a monthly basis. Smyth County, while conceding that was true, showed in rebuttal that the time cards had never been used for any particular purpose, and that no one from the county had ever reviewed them. Kenny Lewis, chief deputy under Sheriff Archer, deposed by the plaintiffs, stated that payment of the deputies' salaries had never been contingent on the county's receipt of the time cards. Lewis Deposition at 62.

The plaintiffs also introduced evidence that Mr. Lewis had reported to the county amounts of accrued leave held by the deputies at least once during each fiscal year, and upon any specific deputy's departure. Also, Mr. Lewis stated that the county at times had paid for items other than salaries not covered by reimbursements to the county made by the Compensation Board. Lewis Deposition at 106–110. Finally, the plaintiffs claim that county officials knew that the deputies were working overtime for which the Compensation Board did not budget and for which the county ultimately might be required to pay.

3. It is not clear that even if the statute of limitations defense were meritorious, *all* of the claims

## III. Issues.

Smyth County presents three grounds in support of its motion: (1) the Eleventh Amendment bars this action against it, (2) Smyth County is not an "employer" within the meaning of the FLSA, and (3) the plaintiffs' claims are barred by the applicable statute of limitations. I address the first two contentions.[3]

## IV. Eleventh Amendment Immunity.

The Eleventh Amendment of the United States Constitution, a constraint upon the power of the federal judiciary, provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. The Eleventh Amendment also bars suit against an unconsenting state by its own citizens, although such a result is not mandated by the Amendment's express language. *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355–56, 39 L.Ed.2d 662 (1974). The immunity afforded by the Eleventh Amendment also extends to state agencies and officials, when a suit against them seeks monetary damages that would be paid from the state treasury:

> [W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officers are nominal defendants.

*Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). It is well-established, however, that political subdivisions are not arms of the state, and are not entitled to immunity under the Eleventh Amendment. *Beardsley v. Webb*, 30 F.3d 524, 532 (4th Cir.1994) (quoting *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency*, 440 U.S. 391, 401, 99 S.Ct. 1171, 1177, 59 L.Ed.2d 401 (1979)).

of *all* the plaintiffs would be barred.

1314

■ Smyth County relies upon the Fourth Circuit's opinion in *Bockes v. Fields,* 999 F.2d 788 (4th Cir.1993), *cert. denied,* 510 U.S. 1092, 114 S.Ct. 922, 127 L.Ed.2d 216 (1994), for the general proposition that a county's participation in a state sponsored risk management program operates to extend the immunity a state enjoys under the Eleventh Amendment to the participating county. Smyth County presses *Bockes* too far. As the district judge in *Bockes* later explained in *Roberson v. Mullins,* 876 F.Supp. 100 (W.D.Va.1995), the court in *Bockes* was faced with the classification, for Eleventh Amendment purposes, of an entity not clearly either a state or local actor but one instead with characteristics of both:

> In sum, the Local Department's structure and organization and its relationship with the Virginia Department, coupled with the fact that most of the judgment would be paid from state funds, preponderate in favor of the conclusion that the Local Department is, in essence, the states' alter ego, and thus, protected by the Eleventh Amendment from a damage award in a § 1983 action in federal court.

*Roberson,* 876 F.Supp. at 102–103 (quoting *Bockes v. Fields,* 798 F.Supp. 1219, 1224 (W.D.Va.1992)). As *Roberson* makes clear, the local department's participation in the state's risk management plan supported a conclusion that an amorphous agency local in nature but with strong connection to its state parent was in fact a state entity. However, the nature of a county is not amorphous at all; the jurisprudence as to a county's entitlement to Eleventh Amendment immunity is long established in that the Eleventh Amendment "does not afford protection to political subdivisions such as counties...." *Roberson,* 876 F.Supp. at 103 (citing *Beardsley v. Webb,* 30 F.3d at 532 (4th Cir.1994) and finding that the county board was not entitled to Eleventh Amendment immunity). *Bockes* did not intend to undo the established interpretation of the Eleventh Amendment. As noted in *Roberson:*

> Extension of Eleventh Amendment immunity to local political subdivisions that participate in a state's voluntary indemnification program would eliminate the need for insurance protection altogether and create

a condition whereby government officials, as well as local political subdivisions, would be "immune from suit by virtue of the state initiating the insurance protection." *Roberson,* 876 F.Supp. at 103 n. 5 (citing *Jackson v. Georgia Dep't of Transp.,* 16 F.3d 1573, 1577 (11th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 320, 130 L.Ed.2d 281 (1994)).

Moreover, Smyth County has provided insufficient evidence that state funds would pay a judgment against it in this case. Smyth County filed an affidavit by Mary Ann Evans which recites that Smyth County has insurance coverage through "a policy from the Commonwealth of Virginia Division of Risk Management" that affords insurance to Smyth County "in this case," and thus she "understand[s] that any recovery against Smyth County in this case would be satisfied from the State treasury." Evans Affidavit, ¶ 18. Smyth County has presented no firsthand evidence of how this insurance coverage operates, how it is funded, or most importantly, whether any state funds are involved. *See Nelson v. Strawn,* 897 F.Supp. 252, 257–58 (D.S.C.1995) (city not entitled to Eleventh Amendment immunity based upon participation in state insurance fund when it failed to show sufficient links to state funding); *Beardsley v. Webb,* 30 F.3d 524, 532 (4th Cir.1994) (deputy sheriff not entitled to claim immunity under the Eleventh Amendment based on his participation in the Virginia State Division of Risk Management when he failed to prove that his coverage involved state funds). Unlike the situation in *Bockes* where most of any judgment necessarily would be provided by state funds, here, Smyth County only argues that "any judgment received by plaintiffs would, *with all reasonable probability,* be paid from the state treasury." Smyth County's Memorandum, Motion for Summary Judgment (Sept. 17, 1996) at 15 (emphasis added). This cannot be enough to shield the county with Eleventh Amendment immunity. I find this court has jurisdiction over the subject matter of this claim against Smyth County.

*V. Claims Under the FLSA.*

■ Smyth County next asserts that, even if jurisdiction were good as to it, it is not an "employer" under the FLSA.

The Act itself is the starting point for the analysis. Under the Act, an employer "includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency." 29 U.S.C. § 203(d). An employee is "any individual employed by an employer," 29 U.S.C. § 203(e)(1) and, "[i]n the case of an individual employed by a public agency," employee means any "individual employed by a State, a political subdivision of a State, or an interstate government agency." 29 U.S.C. § 203(e)(2)(C). "Employ" is defined under the Act as "to suffer or permit to work," 29 U.S.C. § 203(g), and the Act contemplates that an employee may have more than one employer responsible for its provisions. *See Shultz v. Falk*, 439 F.2d 340, 345 (4th Cir. 1971) (citing *Mid–Continent Pipe Line Co. v. Hargrave*, 129 F.2d 655 (10th Cir.1942)). Many courts have commented that these terms allow broad application of the FLSA, *see, e.g., United States v. Rosenwasser*, 323 U.S. 360, 65 S.Ct. 295, 89 L.Ed. 301 (1945) ("[a] broader or more comprehensive coverage of employees within the stated categories would be difficult to frame"), and that resort solely to common law notions of the employment relationship would be inadequate to effectuate the remedial policy goals of the FLSA. *Falk*, 439 F.2d at 344 (finding maintenance workers employees of rental agents managing property for owners).

▮▮▮▮ At the same time, courts have worked to add substance to the Act's vague terms to ensure that an employment relationship exists in fact before the FLSA applies. An entity is responsible as an employer under the FLSA when the work " 'follows the usual path of the employee; and where, as a matter of economic reality, the employee is dependent upon that person for their livelihood.' " *Howard v. Malcolm*, 852 F.2d 101, 104 (4th Cir.1988) (quoting *Haywood v. Barnes*, 109 F.R.D. 568 (E.D.N.C.1986)) (internal citations omitted). Further, courts employ a four-factored analysis to determine that an alleged employee and an alleged employer have sufficient a relationship with one another that liability under the FLSA attaches. An "employer" under the Act is someone who (1) has the power to hire and fire the employee, (2) supervises and controls the employee's work schedule or conditions of employment, (3) determines the rate and method of payment, and (4) maintains employment records. *Hale v. Arizona*, 967 F.2d 1356 (9th Cir.1992), *cert. denied*, 510 U.S. 946, 114 S.Ct. 386, 126 L.Ed.2d 335 (1993) (citing *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir.1983)).

The analysis of an alleged employment using these factors is not an empty exercise. Instead, their use is a means to determine if the alleged employer has enough control over the employee, his working conditions, his workplace, and his pay to compel compliance with the Act. While Congress may have intended to place many types of workers under the Act by using simple yet broad definitions, an employer does not include one who does not "hire and fire employees, control the methods of operations . . ., set hourly wages, or control the payroll." *Dole v. Continental Cuisine, Inc.*, 751 F.Supp. 799, 802 (E.D.Ark.1990). Rather the "FLSA's definition of employer must be understood as including those who, as a matter of economic reality, exert control over those aspects of employment covered by the statute." *Rubin v. Tourneau*, 797 F.Supp. 247, 252 (S.D.N.Y. 1992) (comparing the definition of "employee" in the Employee Polygraph Protection Act). Consistent with the purpose of the four factor test, no one factor is dispositive, but instead I must consider the economic realities and the "circumstances of the whole activity." *Howard*, 852 F.2d at 105 (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947)).

I find that the plaintiffs have failed to produce any facts showing that Smyth County had power to hire or to fire the deputies, to set their rate or method of pay, or to supervise or otherwise control the deputies. Evidence that Smyth County collected and stored the deputies' time cards is not control sufficient to bestow "employer" status upon Smyth County under the FLSA, especially when other evidence shows that no one reviewed the time cards, and payment did not hinge upon the delivery of the cards to the county. That the county provided funds to pay for certain supplies for the operation of

the sheriff's department may speak to the nature of the county's support of local law enforcement within its boundaries, but it does little to illuminate the nature of the county's status as employer to the deputies. Finally, the fact that officials knew of the plaintiffs' overtime and leave situation does not make the county itself a responsible actor.

The miscellaneous provisions of the Virginia statutes that the plaintiffs cite, though in part useful in defining the structure of the relationships here, do not command the conclusion that the county stands in relation to the deputies as an employer.[4] Smyth County simply does not in theory, or in fact, act as the deputies' employer.[5]

While this precise question has not been addressed by this court or the Fourth Circuit,[6] other courts have spoken to the issue. For example, the plaintiffs cite *Fury v. Bech-* *told,* 608 F.Supp. 198 (S.D.W.Va.1985), for the proposition that a county is a necessary party in an FLSA action involving a sheriff. Given the factual nature of the inquiry, caution is urged before too much reliance is placed on particular holdings. It is true in *Fury* that the county was found to be the joint employer of the plaintiffs who were employed by elected county officials. *Id.* at 199. However, in that instance, the county was given the power under West Virginia law to approve the sheriff's choice of deputies, as well as to approve the discharge of such employees. *Id.* at 200. Further, the county commission set the total budget to be expended for the operation of the offices of such elected officials. *Id.* Thus, that court found the county a necessary party as a joint employer. *Id.* This decision is not inconsistent with my finding that under the economic realities of the case at hand, Smyth County is not an employer under the FLSA.

---

**4.** The plaintiffs cite the following provisions of the Virginia Code for support: a county may pay deputies in excess of amounts determined by the Compensation Board, § 14.1–11.4; a county may provide for additional deputies and their salaries beyond those approved by the Compensation Board, and the county recommends to the Compensation Board how many deputies should be hired, § 14.1–70; the county is the proper party to file objections with the Compensation Board regarding salaries for the sheriff or deputies, § 14.1–51; the county employees may be defined to include deputies for purposes of vacation, sick leave, and compensatory time, § 15.1–19.3; the county is authorized to appropriate funds for the operations of the sheriff's department, § 15.1–137.3; the county pays and is reimbursed for approved expenses of the sheriff's department, § 14.1–76; deputies are treated together with county employees for social security and worker's compensation cases, §§ 51.1–700, 51.1–706; the county provides disability benefits for deputies, § 65.2–101; the county may, at its discretion, pay when a deputy is injured or killed on the job, §§ 15.1–76, 15.1–134, 51.1–815; the county may provide insurance for their officers and employees, §§ 15.1–7.3, 51.1–136; the county may defend a deputy in a civil or criminal action, or allow deputies to participate in a county's grievance procedure and personnel system, §§ 2.1–114.5:1(C)(2)(c), 15.1–7.2(C); and the county provides uniforms to the deputies, § 15.1–137.3.

**5.** The parties do not dispute that the determination of the nature of the employment status is governed by federal law. State and federal cases that construe the relationship between the sheriff, his deputies, and local government, while perhaps not controlling in and of themselves, are instructive in determining the status of the various parties in this case. Certainly, these cases support the notion that a sheriff alone is responsible for the operation of his department. *See Olivo v. Mapp,* 838 F.Supp. 259, 261 (E.D.Va. 1993) (city not liable under § 1983 for sheriff's alleged unconstitutional termination of deputy); *Jenkins v. Weatherholtz,* 719 F.Supp. 468, 469 (W.D.Va.1989), *aff'd,* 909 F.2d 105 (4th Cir.1990) (finding that a deputy is not a paid employee of the county under Virginia law; deputies are employees of the sheriff, not the county); *Himple v. Moore,* 673 F.Supp. 758, 759 (E.D.Va.1987) (sheriff does not make policy attributable to the county); *Sherman v. City of Richmond,* 543 F.Supp. 447, 449 (E.D.Va.1982) (sheriff serves independent of locality); *Hilton v. Amburgey,* 198 Va. 727, 729, 96 S.E.2d 151, 152 (1957); *Board of Supervisors of Rockingham County v. Lucas,* 142 Va. 84, 91–92, 128 S.E. 574, 576–77 (1925) (finding no privity of obligation between a deputy sheriff and a county).

**6.** *Brewster v. Barnes,* 788 F.2d 985 (4th Cir. 1986), relied upon by the plaintiffs for the proposition that a county should be held liable for claims brought by a deputy sheriff under the Equal Pay Act, does not reach the issue before the court in this case, and thus, is not controlling here. In *Brewster,* in considering the definition of employee under the Equal Pay Act, the Fourth Circuit noted the defendants "do not deny that Brewster was 'employed by' the defendants and that they were her 'employers.'" *Id.* at 989. The issue in *Brewster* was whether a deputy sheriff fell within the "personal staff" exemption of the Equal Pay Act. *Id.* at 990.

A case analogous to the one here is *Welch v. Laney,* 57 F.3d 1004 (11th Cir.1995), where the Eleventh Circuit affirmed the district court's dismissal of an employee's Equal Pay Act case against the county commissioners and a chief deputy because, considering "the total employment situation," those entities did not qualify as the plaintiff's employer when they had no direct control over her, had no power to hire or fire her, and had no power to determine the terms of her employment. *Id.* at 1010. This finding was affirmed even though the commissioners set the salary for the employment classification of the plaintiff.

Similarly, in *Keenan v. Allan,* 889 F.Supp. 1320 (E.D.Wash.1995), *aff'd,* 91 F.3d 1275 (9th Cir.1996), the district court found as a matter of law that the county was not the "employer" of a worker hired by a county clerk where the county had no connection with the plaintiff's employment other than to budget monies for the superior court to hire someone.

Based on the record, I find that Smyth County was not an employer under the FLSA and thus, is entitled to judgment as a matter of law.

An appropriate order will be entered.

### FINAL JUDGMENT

For the reasons stated in the opinion accompanying this final judgment, it is **ORDERED** and **ADJUDGED** as follows:

1. Summary judgment is granted in favor of Smyth County on the claims of the plaintiffs arising under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.;*

2. The plaintiffs' federal claims against Jerry Archer in his individual capacity are dismissed for failure to make a timely motion for substitution of his executrix as required pursuant to Fed. R.Civ.P. 25(a)(1); and

3. The plaintiffs' state law claims against Jerry Archer based on express or implied contract and Va.Code Ann. § 15.1–19.3 (Michie 1989) are dismissed pursuant to Fed.R.Civ.P. 41(a)(2), without prejudice.

Nothing further remaining to be done herein, this action shall be stricken from the docket.