Milton HOWARD; Samuel Jenkins; Fred McGowan; Lloyd Johnson; Gerald Smith; Jacqueline Williams; Reginald Johnson; Victor Inniss, individually and on behalf of all other migrant farmworkers similarly situated, Plaintiffs–Appellants,

Walter Rippey, Jr., Party in Interest–Appellant,

v.

Kim MALCOLM, d/b/a Baytree Plantation and Barra Farms, Defendant–Appellee,

and

David Godwin, Frank Blanding, Defendants.

Milton HOWARD; Samuel Jenkins; Fred McGowan; Lloyd Johnson; Gerald Smith; Jacqueline Williams; Reginald Johnson; Victor Inniss, individually and on behalf of all other migrant farmworkers similarly situated; Plaintiffs–Appellants,

Walter Rippey, Jr., Party in Interest–Appellant,

v.

Kim MALCOLM, d/b/a Baytree Plantation and Barra Farms, Defendant–Appellee,

and

David Godwin, Frank Blanding, Defendants.

Nos. 87–1654, 87–1720.

United States Court of Appeals, Fourth Circuit.

Argued April 7, 1988.

Decided July 13, 1988.

Rehearing and Rehearing In Banc Denied Aug. 26, 1988.

See also 658 F.Supp. 423 and 629 F.Supp. 952.

Robert James Willis, Raleigh, N.C., (Pamela R. Distefano, Farmworker Legal Services of North Carolina, Greensboro, N.C., Shelley Davis, James Strothmann, Migrant Legal Action Program, on brief), for plaintiffs-appellants.

Charles Franklin Blackburn (Perry, Kittrell, Blackburn & Blackburn, Henderson, N.C., Stephen Lobrano, Lobrano & Kincaid, Jacksonville, Fla., on brief), for defendant-appellee.

Before WINTER, Chief Judge, ERVIN, Circuit Judge, and MacKENZIE, Senior District Judge for the Eastern District of Virginia, sitting by designation.

ERVIN, Circuit Judge:

Plaintiffs Milton Howard and a number of his migrant co-workers appeal the judgment below for defendant Kim Malcolm, d/b/a Baytree Plantation and Barra Farms. The district court found that Malcolm was not their joint employer during the summer of 1985 under the Migrant and Seasonal Agricultural Worker Protection

Act (AWPA), 29 U.S.C. § 1802(2) and (5),[1] and that pursuant to 29 U.S.C. § 1842,[2] Malcolm had sufficiently verified the labor contractor's housing authorization card.[3] We agree with the rulings below regarding Malcolm's employer status. However, we disagree with the district court's interpretation of the verification requirements under § 1842. Thus, we affirm in part and reverse in part.

## I.

In the spring of 1985, Kim Malcolm, manager of Barra Farms in Cumberland County, North Carolina, opted to expand the farm's operation by harvesting sweet corn. To facilitate the harvest, Malcolm hired Frank Blanding, a farm labor contractor, to recruit and oversee a corn harvest crew. Blanding was chosen from among several applicants because of his experience harvesting corn and his ability to operate a "mule train." A mule train is a self-propelled wagon that carries up to ten workers. The machine, with its stations for box makers and corn packers, is used to organize and expedite the corn harvesting.

On May 21, 1985, Malcolm and Blanding entered into an agreement whereby Blanding agreed to provide a mule train and to travel to Barra Farms from Florida in June, 1985, with a crew of migrant workers in order to harvest the corn. The agreement expressly provided that Blanding would furnish the transportation, housing and insurance, and pay the workers wages of $3.35 per hour. Blanding was to receive $1.00 per crate of corn harvested, from which he was to pay the crew's wages and overhead costs. Malcolm would finance the transportation of the mule train from Florida to North Carolina and Blanding would handle its return. In addition, Blanding was responsible for supplying hauling trucks, a bus to transport the workers, and other tools and equipment. With a $2,000 advance from Malcolm, Blanding arranged for the housing of the workers. Malcolm also advanced Blanding $4,300 to finance renting the mule train and recruiting the workers.

At the time of their agreement, Blanding showed his valid 1985 farm labor contractor's certificate of registration to Malcolm. The certificate indicated Blanding was certified to transport, house and drive migrant laborers. On the reverse side, the certificate specified that the authorized housing facility was the "Johnson–Hudson Camp." Blanding arranged housing at the Godwin labor camp.

When the crew arrived in June 1985, they worked two days in the cucumber harvest because the corn crop had not yet matured. Malcolm paid Blanding for the use of his crew and Blanding, in turn, paid his workers. When the crew's inexperience in harvesting cucumbers became evident, Blanding pulled them from the field upon request.

---

1. 29 U.S.C. § 1802 provides in part:

   (2) The term "agricultural employer" means any person who owns or operates a farm, ranch, processing establishment, cannery, gin, packing shed or nursery, or who produces or conditions seed, and who either recruits, solicits, hires, employs, furnishes or transports any migrant or seasonal agricultural worker.

   (5) The term "employ" has the meaning given such term under section 3(g) of the Fair Labor Standards Act of 1938 (29 U.S.C. § 203(g)) for the purposes of implementing the requirements of that Act [29 U.S.C.A. § 201 et seq.].

2. 29 U.S.C. § 1842 provides:

   No person shall utilize the services of any farm labor contractor to supply any migrant or seasonal agricultural worker unless the person first takes reasonable steps to determine that the farm labor contractor possesses a certificate of registration which is valid and which authorizes the activity for which the contractor is utilized. In making that determination, the person may rely upon either possession of a certificate of registration, or confirmation of such registration by the Department of Labor. The Secretary shall maintain a central public registry of all persons issued a certificate of registration.

3. We agree with the district court's finding that an additional claim by workers Howard, Innis and Johnson was waived. These workers alleged Malcolm was their sole employer when they worked a brief period of time in the Barra Farms packing house. At the conclusion of the trial below, the court requested that the workers brief this issue, which had not been pleaded but was raised at trial. Neither plaintiffs' nor defendants' post-trial memorandum addressed this question. Thus, we agree that this claim was abandoned by plaintiffs.

The corn harvest proved to be unsuccessful, with weather conditions destroying about half of the crop. In the fields Blanding provided day-to-day supervision, and Malcolm gave overall instructions on where and when to harvest in order to save the maximum amount of the corn crop.

Although Blanding deducted FICA taxes from the crew's wages, he did not submit the money to the federal government in 1985 or 1986. He neither deducted nor paid any FUTA taxes.

The workers filed this action on September 23, 1985, under the AWPA, 29 U.S.C. §§ 1801 *et seq.*, and the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201 *et seq.*[4] Before trial, a settlement was reached between the workers and Malcolm with respect to the FLSA claims. Along with other claims which are not at issue here, the workers alleged that Malcolm was a joint employer under 29 U.S.C. § 1802(2) and (5), and that he violated various provisions of the AWPA by failing to pay the crew their wages when due, failing to pay FUTA and FICA taxes on their behalf, and failing to keep adequate work records. The migrant workers also alleged that Malcolm failed to comply with the housing verification requirements under 29 U.S.C. § 1842.

The AWPA claims were tried before the court from February 23 to March 3, 1987. On June 10, 1987, the district court ruled that Malcolm was not a joint employer of the farmworkers and therefore not liable under the AWPA. Citing *Haywood v Barnes*, 109 F.R.D. 568 (E.D.N.C.1986), the trial court considered various factors in determining Malcolm's nonemployer status. First, Barra Farms owned or leased the farmland, but David Godwin owned the housing site. All housing arrangements were made by Blanding, although an advance from Malcolm did finance the rental of the Godwin site. The court emphasized that Blanding and his workers provided skilled labor in their operation of the mule train. Blanding, not Malcolm, owned or leased the major equipment used by the crew, including the mule train, a truck and a bus for transportation of the workers. The workers were recruited by Blanding solely for the sweet corn harvest, working a total of fourteen days. Blanding was employed for one summer, for one crop harvest, and was the sole labor contractor at Barra Farms with a labor contract. Blanding bargained for his pay rate, and in turn set the wages for the workers. He gave them their pay on a daily basis as opposed to the weekly schedule practiced by Barra and its employees. Furthermore, he exercised the day-to-day supervision of the crew. Malcolm's instructions were limited to advising Blanding which portion of the crop to harvest in light of the crop damage. Blanding had the responsibility for hiring, controlling and firing the employees; however, Barra Farms did dismiss one of Blanding's workers for being intoxicated on the job site. Finally, Blanding was responsible for preparing the payroll and maintaining wage records.

Based on these factors, the district court found that Blanding was an independent contractor and that Malcolm was not a joint employer, and thus not liable as such for the workers' AWPA claims. The lower court also found that Malcolm had taken reasonable steps to ensure that Blanding was properly authorized to house the workers pursuant to 29 U.S.C. § 1842.

II.

The definition of "employer" under the AWPA includes the employment principles under the FLSA, 29 U.S.C. § 203(d) and (g). 29 C.F.R. § 500.20(h)(1)(2)(3) (1987). Under the AWPA and FLSA, "a person is responsible as an 'employer' of another where the work 'follows the usual path of the employee; and where, as a matter of economic reality, the employee is dependent upon that person for their livelihood.'" *Haywood* at 586, quoting *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 470–71

---

**4.** Plaintiffs also filed suit against Malcolm, Blanding and David Godwin, the owner of the workers' housing camp. Summary judgment against Godwin was entered by the district court on February 20, 1987. *Howard v. Malcolm*, 658 F.Supp. 423 (E.D.N.C.1987). A default judgment was entered against Blanding on June 10, 1987.

(11th Cir.1982). "Joint employment" is defined as follows:

> The term "joint employment" means a condition in which a single individual stands in the relation of an employee to two or more persons at the same time. A determination of whether the employment is to be considered joint employment depends upon all the facts in the particular case. If the facts establish that two or more persons are completely disassociated with respect to the employment of a particular employee, a "joint employment" situation does not exist.

29 C.F.R. § 500.20(h)(4)(i).

When deciding the status of Malcolm with regard to the workers, this court is to consider all factors. "It is not essential that the farmer have control over all aspects of the work of the laborers or the contractor." *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317 (5th Cir.1985). The "determination of the relationship does not depend on ... isolated factors, but rather on the circumstances of the whole activity." *Rutherford Food Corp v. McComb*, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947) (FLSA at issue).

The district court performed a detailed analysis of the various circumstances in this case. We agree with the findings of fact as put forth by the lower court. From the start, Blanding, not Malcolm, was responsible for the welfare of the crew. He recruited them, and arranged for their housing and transportation. He bargained for the corn price per crate with Malcolm and then separately determined the wages for his crew. Although he was negligent in performing many of his duties, it was Blanding who was responsible for submitting taxes on behalf of the crew and maintaining work records. Blanding directly supervised the field operations.

Most significant are two factors. First, Malcolm hired Blanding to recruit a crew to perform the skilled task of operating a mule train. In *Beliz, supra*, the Fifth Circuit, in finding the farm owner was an employer emphasized the fact that the laborers performed unskilled labor. *See also, Castillo v. Givens*, 704 F.2d 181 (5th Cir.), *cert. denied*, 464 U.S. 850, 104 S.Ct. 160, 78 L.Ed.2d 147 (1983). Second, Malcolm and Blanding signed a contract designating Blanding as a contractor responsible for his own crew.

We do not ignore the factors favoring the workers, particularly the amount of money advanced to Blanding for housing, transportation, and rental fees for the mule train. However, such practice is common in many types of business, such as farming and construction, where the independent contractor depends on the advances to proceed with his work. While such advances may point to the owner's employer status, they are not determinative in the face of contrary circumstances.

Therefore, based on the particular facts in this case, this court agrees with the district court's ruling that Malcolm was not an employer of the farmworkers within the meaning of § 1802(2) and (5), and thus not liable for the workers' employer-related AWPA claims.

### III.

The workers also appeal the adverse ruling by the district court that Malcolm complied with the requirements in § 1842. 29 U.S.C. § 1842 provides in part that "[n]o person shall utilize the services of a farm labor contractor ... unless the person first takes reasonable steps to determine that the farm labor contractor possesses a certificate of registration which is valid and which authorizes the activity for which the contractor is utilized."

Blanding showed Malcolm a valid certificate that authorized him to house and transport migrant farmworkers. On the front of the certificate were boxes containing checks, indicating authorization for the general activities of housing and transportation. Just below these boxes was the following provision: "Transportation and/or Housing authorization is specified on this Certificate." Appendix at 1049. On the reverse side, the facility specifically authorized was the Johnson–Hudson camp. The workers were housed at the Godwin camp.

The court below found that § 1842 required that Malcolm take reasonable steps to determine if Blanding was authorized to house the crew, but he need not be concerned with the location. The authorized "activity" only referred to housing in general.

We disagree. On the face of the certificate, in the statement just below the boxes, the specific location is expressly incorporated as an activity requiring authorization. Furthermore, this interpretation is in keeping with the legislative purpose of § 1842. Before a farm labor contractor can obtain a valid certificate, he or she must inform the Department of Labor of the specific facility that will be used and submit documentation showing the site meets applicable federal and state health standards. 29 U.S.C. §§ 1811(a), 1812(3) and 1823(b)(1), and 29 C.F.R. §§ 500.48(f) and 500.55(c) (1987). For § 1842 to be effective, growers who delegate housing responsibilities must verify that the labor contractor is authorized to house the workers at the safe, sanitary facility designated in the certificate. Mere verification that the contractor may arrange housing in general will serve as little, if any, protection for the crewmembers.

■ Thus, this court finds that when § 1842 requires the grower or farm owner to take reasonable steps to ensure that the contractor is authorized to do the activity in question, he is required to reasonably verify the specific location.

### IV.

In light of the factors described above, the finding by the district court that Malcolm was not an employer of Malcolm's migrant workers during the summer of 1985 is affirmed. Based on our interpretation of the scope of authorization in the contractor's certificate, we reverse the court below in regard to the § 1842 claim and remand this issue for further proceedings in keeping with this opinion.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.

HARRISON L. WINTER, Chief Judge, concurring in part and dissenting in part:

I concur in Part III of the majority opinion. But I do not think that the facts as found by the district court support the conclusion that, under the applicable principles of law, Frank Blanding was the sole employer of the farmworkers. I therefore respectfully dissent from Part II of the majority's opinion.

### I.

The focus of an inquiry into whether a party is a joint employer "must be on each employment relationship as it exists between the workers and the party asserted to be a joint employer." H.R.Rep. No. 885, 97th Cong., 2d Sess. 7–8, *Reprinted in* 1982 U.S.C.Cong. & Admin.News 4547, 4553–54 [Hereinafter H.R.Rep. No. 885]. The undisputed employer's status as a bona fide independent contractor "does not as a matter of law negate the possibility that an agricultural employer or association may be a joint employer." *Id.* The primary inquiry here is thus on the relationship between Malcolm and the farmworkers.

Moreover, in enacting the AWPA, Congress explicitly adopted the holdings in three cases arising under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* They are *Hodgson v. Griffin & Brand of McAllen, Inc.*, 471 F.2d 235 (5 Cir.), *cert. denied*, 414 U.S. 819, 94 S.Ct. 43, 38 L.Ed.2d 51 (1973); *Hodgson v. Okada*, 472 F.2d 965 (10 Cir.1973); *Real v. Driscoll Strawberry Associates*, 603 F.2d 748 (9 Cir.1979); *see* H.R.Rep. No. 885, 1982 U.S.C.Cong. & Admin.News at 4553. In all of these cases courts declined to give credence to the employment relationship as defined by the defendants, and instead formulated an "economic reality" test. This test depends heavily on prior Supreme Court precedent interpreting other social welfare legislation. *See, e.g., Bartels v. Birmingham*, 332 U.S. 126, 67 S.Ct. 1547, 91 L.Ed. 1947 (1947) (Social Security Act); *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 67 S.Ct. 1473, 91 L.Ed. 1772 (1947) (Fair

Labor Standards Act); *United States v. Silk*, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757 (1947) (Social Security Act).

*Griffin & Brand* analyzed the question of a joint employment relationship by focussing on the following five factors:

(1) Whether or not the employment takes place on the premises of the company?;

(2) How much control does the company exert over the employees?;

(3) Does the company have the power to fire, hire, or modify the employment condition of the employees?;

(4) Do the employees perform a 'specialty job' within the production line?; and

(5) May the employees refuse to work for the company or work for others?

471 F.2d at 237–38, *quoting Wirtz v. Lonestar Steel Co.*, 405 F.2d 668, 669 (5 Cir.1968). No factor is determinative, and the court must view the relationship between the workers and the alleged employer in light of the "total work arrangement." *Griffin & Brand* at 238.

In addition to these factors, under regulations passed by the Department of Labor, "[i]f the facts establish that two or more persons are completely disassociated with respect to the employment of a particular employee, a 'joint employment' relationship does not exist." 29 C.F.R. § 500.20(h)(4)(i). This factor is particularly important given the fact that whether an employee works for more than one employer cannot be easily determined by such traditional indicia as the alleged employees' capital investment. *See, e.g., Secretary of Labor v. Lauritzen*, 835 F.2d 1529, 1541 (7 Cir.1987) (Easterbrook, J., concurring).

## II.

I turn then to the application of these principles of law. First, the AWPA envisions situations where joint employers both possess substantial capital. The district court was therefore incorrect to use Blanding's capital investment as a factor which negated the existence of an employment relationship between Malcolm and the farmworkers, especially in view of the fact that not only did Malcolm advance Blanding substantial funds to secure housing and equipment, but he ultimately forgave these "loans" in whole.

Second, the district court also considered that because Blanding and Malcolm delegated to Blanding the responsibility to pay taxes and account for the workers' time, Blanding and not Malcolm was the employer. However, the duty to withhold FICA, FUTA and income tax is a legal one, and the party with the responsibility to carry it out is the employer, as defined by the AWPA and relevant case law, regardless of the arrangement made by the parties.

In assessing the circumstances of Malcolm's relationship with the farmworkers, I would conclude that he is at least a joint employer within the meaning of AWPA. At all times, the work done by the farmworkers was done on the property of Barra Farms. The evidence demonstrates the type of control indicative of an employer. The plaintiffs were given work picking cucumbers because they arrived too early for the corn harvest for which they were originally hired. Malcolm's employees who supervised pickers ordered the workers to leave because of the damage they were doing to the vines, which were expected to produce another, later yield. Moreover, the plaintiffs worked alongside admitted employees of Barra Farms picking cucumbers, and were paid the same rate by Blanding that Malcolm paid to his own workers. In at least one instance Malcolm's crew insisted that a worker be fired because of a drinking problem. When the packing operation needed extra employees Malcolm's foremen recruited some of the plaintiffs to make up the shortage.

Later, during the corn harvest, Malcolm himself closely supervised the picking. Although he and his supervisors may have spoken to Blanding rather than to plaintiffs, such an arrangement does not negate the fact that it was Malcolm's orders which were invariably carried out. *See Griffin & Brand*, 471 F.2d at 238. The district court found that although Malcolm had in fact exercised control over Blanding and the plaintiffs during the corn harvest, his supervision was inconsequential because of

the exigent circumstances of the corn harvest. Specifically, the corn developed "dryback", thus necessitating the oversight of someone more skilled in determining which corn should be picked. Blanding and plaintiffs did not possess that skill. In fact, the only skill which either Blanding or plaintiffs demonstrated was being able to drive a mule train. The district court characterized the operation of the mule train as requiring a minimal degree of skill, and further found that this skill was provided almost entirely by Blanding himself and not by plaintiffs. Their lack of skill, and Blanding's lack of managerial initiative are indicative of an employee relationship with Malcolm. *Castillo v. Givens*, 704 F.2d 181, 190 (5 Cir.), *cert. denied*, 464 U.S. 850, 104 S.Ct. 160, 78 L.Ed.2d 147 (1983). At the very least, Blanding and Malcolm worked together closely, which precludes Malcolm from claiming that he was wholly disassociated from plaintiffs who constituted Blanding's crew.

Another factor that the district court considered indicative of Malcolm's status as a contractor, and not an employer, was the fact that plaintiffs worked at other farms later in the summer. However, an "employee may, of course, work for different employers at different times and still be an employee of each." *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1329 (5 Cir.1985). Such was the case here.

### III.

In summary, it is my view that Congress enacted the AWPA with the knowledge that there were many types of work relationships prevalent in agricultural employment. Congress specifically declined to allow the alleged employers' designation of their preferred arrangements to defeat the purposes of the AWPA. Instead it proceeded on the principle that "it is economic reality, not contractual labels, nor isolated factors which is to determine employment relationships under this Act." H.R.Rep. No. 885, 1982 U.S.C.Cong. & Admin.News 4553. From the record, I think it clear that Blanding and Malcolm intended to agree to

an arrangement whereby Blanding assumed responsibility for plaintiffs. That agreement, however, cannot redefine the actual conditions present in the field at the time the farmworkers performed the labor for which they had been hired. At all times, plaintiffs were subject to the control of *both* Blanding and Malcolm, and at all times carried out the wishes of Malcolm. This is sufficient to make Malcolm a joint employer.

I would reverse the judgment of the district court in its entirety and remand the case for an assessment of damages for Malcolm's violation of 29 U.S.C. §§ 1821 and 1822, as well as § 1842.